**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

US Salt, Inc.,

        Plaintiff,

                              Civ. No. 07-1988 (RHK/JSM)
                              **MEMORANDUM OPINION
                              AND ORDER**

v.

Broken Arrow, Inc.,

        Defendant.

Evon M. Spangler, Perry M. de Stefano, Spangler and de Stefano, PLLP, St. Paul, Minnesota, for Plaintiff.

Wallace G. Hilke, Amy R. Mason, Daniel N. Sacco, Lindquist & Vennum PLLP, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

      The issue before the Court is whether US Salt has any evidence of damages that should be submitted to a jury. For the reasons set forth below, the Court finds that it does not and consequently its breach-of-contract claim fails as a matter of law.

**BACKGROUND**

      This case arises out of a contract dispute between US Salt and Broken Arrow. US Salt alleged that Broken Arrow violated the agreement when it stopped shipping salt. The Court agreed with US Salt and granted its motion for summary judgment as to

liability on this claim.[1]  The parties then submitted their voluminous trial materials on the issue of damages and filed numerous evidentiary objections.  US Salt relied heavily on its damages expert, Arthur H. Cobb, to prove its lost-profits claim.[2]  Broken Arrow, however, moved to exclude Cobb's proposed testimony and expert reports under Federal Rule of Evidence 702.  Under Rule 702, an expert may testify if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  The party offering expert testimony has the burden to prove its admissibility.  Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001).

The Court carefully reviewed Cobb's expert reports, his deposition testimony, and the parties' briefs, including their arguments at the April 24, 2008 pretrial hearing.  It concluded that Cobb's proposed testimony was not sufficiently reliable under Rule 702.  Cobb issued two reports, both of which had very little analysis and were riddled with unsupported assumptions.  Cobb initially opined that US Salt's lost profits were $1,800,000, but later revised that number in his supplemental report to a range of

---

[1] Although the Court denied Broken Arrow's motion for summary judgment on US Salt's breach of express and implied warranty claims, it later dismissed those claims with prejudice because the record conclusively established that the nonconforming salt had been cured.  (See Doc. No. 127.)  At the pretrial hearing on April 24, 2008, counsel for US Salt was unable to specifically identify any damages related to these claims.  (See 4/24/08 Unofficial Tr. at 15.)  Furthermore, US Salt never disclosed these damages as part of its initial disclosures or in its response to Broken Arrow's interrogatory on damages.  See Fed. R. Civ. 26(a)(1)(A)(iii), Fed R. Civ. P. 26(e)(1)(A), Fed. R. Civ. P. 37(c)(1).

[2] The Court points out that US Salt's exhibit list (Doc. No. 89) contained a number of documents related to lost profits that were never previously disclosed to Broken Arrow.  (See Exs. 94-97.)  Furthermore, these documents were completely inconsistent with US Salt's initial-damages disclosure and with Cobb's two expert reports.  (See Doc. No. 113 at 4.)

$600,000 to $1,060,000.  (See Doc. No. 65 Exs. A-B.)  Damages that are remote, speculative, or conjectural are not recoverable as a matter of law.  Leoni v. Bemis Co., Inc., 255 N.W.2d 824, 826 (Minn. 1977).  Although the law does not require mathematical certainty in the proof and calculation of lost profits, it requires evidence of definite profits *grounded upon a reasonable factual basis.*  See Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 266-67 (Minn. 1980).  Notably, Cobb relied almost exclusively on the assumptions and estimates provided by US Salt's president and owner, Tom Johnson.  (See, e.g., Doc. No. 65 Ex. F at 23-24, 26-27, 33-35, 48-49, 52, 87-88, 90-92.)  But Cobb did nothing to investigate the market conditions in Minnesota or verify the estimates in his reports despite the fact that US Salt's sales projections and goals were based on vague and speculative information.  (Id. at 17, 27-32, 34-35, 41, 48-49, 76-78, 80; Ex. G at 53, 56, 58-59, 68, 72.)  The difficulties with Cobb's expert reports are illustrated by his deposition testimony:

> Q:  Did Mr. Johnson tell you who had prepared Exhibit 30?[3]
>
> A:  I think there was a reference that a person who had acted in a financial role for the company had initially prepared Exhibit 30.  I don't remember the person's name . . . .

(Cobb's Jan. 25, 2008 Dep. at 52.)

> Q:  Did you speak with the person who actually prepared this document?
>
> A:  No.

(Id.)

---

[3] Exhibit 30 is an incomplete spreadsheet that was prepared by US Salt's former office manager, which purportedly shows US Salt's lost profits.  (See Doc. No. 112 at Ex. B; Ex. C at 170-71.)

>Q: Have you done anything to verify . . . that it's accurate?
>
>A: Not that comes to mind.

(Id.)

>Q: Did you ask Mr. Johnson to provide you with any backup documentation for any of these items [in Exhibit 30?]
>
>A: No.

(Id. at 34.) In essence, Cobb has not formed an opinion as to US Salt's lost profits; he has simply adopted Johnson's opinion as to US Salt's expected sales and the nature of the market. But as illustrated by Johnson's testimony, US Salt's expected sales were speculative at best:

>Q: Did Mr. Capone ever tell you the volume of salt he expected to buy from you?
>
>A: He gave me different estimates, and then like I say, from what he gave I had no way of verifying it until I started bagging or trying to do that.

(Johnson Dep. at 217.)

>Q: Throughout your marketing efforts were you able to get a written commitment from any customer regarding how much they would pay for solar salt?
>
>A: No.

(Id. at 226.) In the Court's view, Johnson's assumptions and estimates as to US Salt's expected sales were nothing more than optimistic projections. And Cobb's wholesale acceptance of Johnson's projections without any verification of these estimates or any independent market analysis is simply too speculative to submit to a jury. See Hammann v. 1-800 Ideas.com, Inc., 455 F. Supp. 2d 942, 948 (D.

Minn. 2006) (Schiltz, J.) ("Damages for lost profits, especially for a relatively new business venture, must be supported by specific, concrete evidence, not by mere 'speculation and conjecture.'") (citing Mostly Media, Inc. v. U.S. W. Commc'ns, 186 F.3d 864, 866 (8th Cir. 1999) (noting that "[t]he burden of proof required of a plaintiff in a lost-profits case is admittedly heavy" and affirming district court's determination that the proof of damages was too speculative)). In neither his expert reports nor his depositions could Cobb identify a reliable factual basis for his opinions regarding US Salt's expected sales, demand for solar salt, or the market conditions in Minnesota. Accordingly, the Court excluded Cobb's unreliable testimony regarding lost profits.[4]

The Court recognized that these evidentiary rulings left US Salt with little or no evidence of damages. It then asked if there were any remaining damages for trial, to which US Salt's counsel responded: "[w]ell, there are damages that we have not – we were not planning on including in the case because we were looking primarily at the lost profits . . . ." (4/24/08 Unofficial Tr. at 6.) Nonetheless, the Court requested that US Salt promptly provide Broken Arrow and the Court with a summary of what damages, if any, it believed remained for trial. (Id. at 46-47, 49.)

---

[4] The Court also excluded Johnson's proposed testimony with respect to lost profits (Doc. No. 127) because, as acknowledged by counsel for US Salt, Johnson does not have the financial expertise or specialized knowledge that is necessary for calculating and presenting its complex lost-profits claim to a jury. (4/24/08 Unofficial Tr. at 26-28.) Furthermore, the record shows that Johnson's assumptions for expected sales were based on speculative information and were devoid of any evidence showing that a proven market existed for this product or that comparable businesses that were similarly structured had been successful. See Cardinal, 297 N.W.2d at 267-68 (explaining how a new business can prove its lost profits).

US Salt, however, appeared to misunderstand the Court's request. Instead of providing a summary of previously claimed damages that remained for trial, it submitted an itemized list of damages totaling approximately $225,491 that had never been previously disclosed to Broken Arrow. Its new damages claim was made up of the following items: (a) equipment costs: $172,797; (b) rail-car demurrage: $28,280; (c) bag costs: $22,798; (d) fliers: $1,246; and (e) travel costs: $370. Broken Arrow moved to exclude US Salt's new damages claim, arguing that such damages were never disclosed and would unfairly prejudice Broken Arrow on the eve of trial.

The Court held a hearing on April 30, 2008 to address the issue of damages. Attached to US Salt's one-page list of damages were hundreds of exhibits that were not cross-referenced to its itemized list of damages. Notably, US Salt did not provide any explanation as to how it calculated its damages or why they were appropriate to submit to a jury. Because the Court did not fully understand US Salt's proffer of damages, it continued the trial to May 12, 2008, and directed US Salt to submit a memorandum explaining its damages theory and a document that cross-referenced its itemized damages with the attached exhibits. The Court also ordered the parties to meet with Magistrate Judge Mayeron on May 8, 2008 for a settlement conference in light of its recent evidentiary rulings. The parties' submissions on the issue of damages followed.[5]

---

[5] The trial was rescheduled to June 10, 2008. (See Doc. Nos. 130-31.) The parties informed the Court on May 21, 2008 that they were unable to reach a settlement.

## ANALYSIS

US Salt contends that its new damages claim should be allowed as reliance damages under the Minnesota Uniform Commercial Code ("UCC") and as incidental and consequential damages. Broken Arrow, however, argues that US Salt's new damages claim should be excluded because US Salt never previously disclosed such evidence.[6] Broken Arrow asserts that the exclusion of US Salt's new damages claim would leave US Salt with no evidence of damages, which would require dismissal of US Salt's breach-of-contract claim.

The record shows that during the discovery process, Broken Arrow served an interrogatory on US Salt that required US Salt to identify its damages theories and the factual basis and methodology for its calculations. But US Salt never disclosed the damages it now seeks to present at trial in its response to that interrogatory. Broken Arrow's interrogatory on the issue of damages and US Salt's answer were as follows:

> **Interrogatory No. 14:** Describe in detail all damages that you allege in this action together with your method for calculating damages and a complete description of all evidence that you understand to support your claim of damages.
>
> **Answer:** See Exhibit 30 which is hereby attached and incorporated by reference herein showing the detail of damages and the method for calculating. Discovery is ongoing. Plaintiff reserves the right to supplement its answer.

---

[6] Broken Arrow also argues that reliance damages are not permitted under the Minnesota UCC and that US Salt's new damages do not qualify as incidental or consequential damages. For the reasons explained below, the Court need not address these arguments because US Salt's new damages claim was never previously disclosed to Broken Arrow as required by the discovery rules.

(Doc. No. 112 Ex. A at 17.)  Exhibit 30 relates to US Salt's lost-profits claim; nowhere does it disclose the damages US Salt now seeks.  (Id. at Ex. B.)  In fact, US Salt acknowledges that this is a new damages claim.  (See Pl.'s Reply Mem. on New Damages Theory at 1-5.)

The purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).  Notably, US Salt was required to disclose the calculation of its damages in its initial disclosures.  See Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring as part of the initial disclosures "a computation of each category of damages claimed by the disclosing party.")  Furthermore, US Salt was required to supplement its disclosures "in a timely manner if [it] learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to [Broken Arrow] during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).

Here, it is undisputed that US Salt never disclosed the damages it now seeks to offer at trial and never supplemented its disclosures on damages as required by the Federal Rules of Civil Procedure.  So what is the consequence here?  Rule 37(c)(1) provides that the Court must exclude the undisclosed evidence at trial unless a party shows that failure to comply with Rule 26(a) or 26(e) was substantially justified or harmless.  The Eighth Circuit has set forth four factors that the Court should consider in

determining whether a failure to disclose was justified or harmless: (1) the importance of the excluded material; (2) the explanation for failing to comply with the disclosure rules; (3) the potential prejudice from allowing the material to be used at trial; and (4) the availability of a continuance to cure such prejudice. Citizens Bank v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994).

Applying these factors, the Court determines that the nondisclosure of US Salt's new damages claim was neither substantially justified nor harmless. There is no question that the undisclosed damages are important to US Salt's claim. Despite the importance of this evidence, however, US Salt has failed to present a reasonable explanation for its failure to disclose this evidence of damages. It attempts to explain its failure to disclose on the basis that this Court's exclusion of its lost-profits claim forced it to now disclose a new damages claim. "The problem with [US Salt's] response is that the time for calculating damages and disclosing its theory on damages was long ago." Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc., No. 05-60120, 2007 WL 627874, at *7 (E.D. Mich. Feb. 26, 2007) (finding that party had offered no justification for its failure to disclose information regarding its damages calculation and that such failure had "blindsided" other side and therefore was prejudicial given that discovery was closed). The purpose of discovery "is to narrow the issues, *to eliminate surprise,* and to achieve substantial justice." Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1968) (emphasis added). As part of its initial disclosures, US Salt was required to disclose a computation of each category of damages. See Fed. R. Civ. P. 26(a)(1)(A)(iii). If the

9

evidence for its damages claim became known or available only after its initial disclosure, then its initial response should have been supplemented pursuant to Rule 26(e)(1)(A).  "For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests.  Parties are entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue."  <u>ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.</u>, 53 F.3d 186, 190 (8th Cir. 1995) (affirming district court's exclusion of evidence of damages because of plaintiff's incomplete interrogatory responses and "an eleventh-hour attempt to switch the basis for its alleged damages") (internal quotations and citations omitted).

   The record shows that US Salt's new damages claim came unexpectedly on the eve of trial and only after the Court excluded its evidence on lost profits.  The Court concludes that it would be highly prejudicial to Broken Arrow if the undisclosed evidence for US Salt's new damages claim was allowed at trial given that Broken Arrow has not had a full opportunity to test the reliability of this evidence through discovery and expert analysis.  For example, US Salt's failure to disclose has prevented Broken Arrow from retaining an expert witness to offer testimony on the value of the used equipment and from deposing other witnesses, including Johnson, on these specific damages.  It would be fundamentally unfair to allow US Salt to proceed with a completely new damages claim that was never revealed during the discovery process.  Moreover, the record shows that all of the evidence US Salt seeks to introduce was in its possession

from the very early stages of the litigation and it offers no excuse for its failure to disclose other than its strategic decision to seek only lost profits as damages.[7]

Finally, the Court concludes that a continuance is unwarranted under the circumstances here. Although the Court could further delay the trial and open up discovery on US Salt's new damages claim, it would be unduly prejudicial to Broken Arrow given that US Salt is completely responsible for creating this situation. At this very late stage of the proceedings, the Court finds that it is neither appropriate nor economical to reopen discovery on US Salt's new damages claim.

Based on the foregoing, the Court concludes that US Salt's failure to disclose its new damages claim was neither substantially justified nor harmless. Accordingly, this evidence must be excluded. See Fed. R. Civ. P. 37(c)(1).

Having no evidence of damages, US Salt cannot prevail on its breach-of-contract claim as a matter of law. Under Minnesota law, a breach-of-contract claim consists of four elements: (1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the contract by the defendant; and (4) damages. Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (applying

---

[7] US Salt alleged in its Complaint that it was seeking incidental and consequential damages. As such, US Salt argues that Broken Arrow was on notice for the damages it now seeks. The Court disagrees. US Salt produced more than 15,000 pages of documents in response to Broken Arrow's discovery requests. (Third Hilke Aff. ¶ 8.) These documents were not segregated or organized according to the document requests to which they were responsive. (Id.); see also Fed. R. Civ. P. 34(b)(2)(E)(i). Furthermore, Broken Arrow is not required to examine this material in order to discern every possible claim for damages that might conceivably be made when it had already asked US Salt to specify its calculation of damages. See ELCA, 53 F.3d at 190 (party posing the interrogatory is entitled to rely on the answer given by the opponent). It is US Salt's responsibility under the federal rules to disclose its damages calculation. US Salt, however, failed to do that with respect to the damages it now seeks to offer at trial.

Minnesota law). "A breach of contract claim fails as a matter of law if the plaintiff cannot establish that [it] has been damaged by the alleged breach." Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004).

Because US Salt cannot prove damages – an essential element of its breach-of-contract claim – that claim necessarily fails.  See id.; see also Multimatic, 2007 WL 627874, at *7-8 (excluding evidence of damages because party did not include its calculation of damages in its initial disclosures or in its interrogatory responses.  Because the party had no evidence of damages, it could not prevail on its claim as a matter of law).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that US Salt's new damages claim is **EXCLUDED** and its Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May 30, 2008

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge